Stanley C. RICHIE

v.

UNITED STATES of America.

No. 747.

United States District Court
E. D. Louisiana,
Baton Rouge Division.
July 9, 1964.

James A. George, New Orleans, La., for petitioner.

Louis C. LaCour, U. S. Atty., Louis R. Lucas, Asst. U. S. Atty., New Orleans, La., for defendant.

WEST, District Judge.

This is a proceeding under Title 28 U. S.C.A. § 2255. Petitioner is presently incarcerated in the federal penitentiary at Atlanta, Georgia, having been sentenced by this Court, on December 7, 1962, to a term of five (5) years upon his plea of guilty of a violation of Title 18 U.S.C.A. § 2314, Interstate Transportation of Stolen Property. The sentence then imposed was to begin upon the release of the defendant by the State of Louisiana for whom he was, at that time, serving a prison sentence. Petitioner now contends that the sentence imposed is in violation of his constitutional rights because (1) he did not competently, intelligently, or understandingly enter a plea of guilty; (2) that he did not competently, intelligently, or understandingly waive his constitutional right to assistance of counsel for his defense; (3) that his plea of guilty was induced by coercion, intimidation, and false promises; (4) that the Court failed to make the mandatory and jurisdictional determination that the plea of guilty was voluntarily made with understanding of the nature of the charge.

In order to thoroughly investigate the merits of petitioner's charge, this Court had the petitioner returned from the federal penitentiary at Atlanta, Georgia, to the Courthouse in Baton Rouge, Louisiana, for a hearing on May 1, 1964. At this hearing, petitioner was represented by his attorney, James A. George, Esq. Now, after a thorough and complete evidentiary hearing, this Court concludes that petitioner's charges of deprivation of constitutional rights are completely and totally without merit, and his Section 2255 application must therefore be denied for the following reasons.

Petitioner is a male Negro approximately 50 years of age, who has spent the greater portion of his adult life in penal institutions. He has been in and out of courts, and in and out of penal institutions, and in every instance where he has been charged and tried for criminal offenses he has been represented by counsel (except in the instant case). He is able to read and write effectively, and after hearing him testify, there could be no doubt in the Court's mind as to his ability to think and act rationally and intelligently after weighing all relevant facts. To say that he is somewhat familiar with the workings of the Court and judicial processes would be an understatement.

The five year sentence about which petitioner now complains was imposed for violation of Title 18 U.S.C.A. § 2314, an indictment for which was returned against him in the Southern District of Texas. At that time, however, petitioner was incarcerated in the Louisiana State Penitentiary for a violation of state law. As a result of the federal charge, a detainer was lodged against him, and he was contacted by the United States Attorney's office at Houston, Texas, and in-

formed of the federal charge against him. Thereafter, Mr. Conrad Janish, an agent of the Federal Bureau of Investigation, visited petitioner at Louisiana State Penitentiary on two different occasions to inquire as to whether or not petitioner wanted to plead guilty to the federal charge and have his case determined in the Eastern District of Louisiana under Rule 20 of the Federal Rules of Criminal Procedure, or whether he wanted to plead otherwise, and, at the conclusion of his state sentence, be transported to the Southern District of Texas for appropriate proceedings. It was quite obvious from the very beginning that this petitioner was intent upon making some kind of a deal with the federal authorities in order to lessen the possible sentence that might be imposed upon him for this federal offense. During his discussions with Mr. Janish he stated that he was unable to make up his mind, and that he was communicating with several attorneys on the matter. Petitioner admitted that he had communicated with several attorneys concerning his plight, and that he thereafter corresponded with the United States Attorney's office in Houston, Texas. He tried to induce the United States Attorney in Houston, Texas to drop the federal charges against him, but he was advised that the charges would be prosecuted. He then wrote the United States Attorney in Houston asking whether or not that office would recommend to the federal judge in Louisiana that, if he pleaded guilty, his sentence would run concurrent with the state sentence which he was then serving. There is no question but that petitioner knew that such promises or compromises could not be made. In his letter to the United States Attorney he stated "I know that you are not allowed to make any promises or comprimeses (sic), but if at all possible * * *" would the United States Attorney recommend concurrent sentences. This letter was answered on October 15, 1962, by James F. Dickson, Jr., Assistant United States Attorney in Houston, Texas, in which answer he informed the petitioner that the United States Attorney was not allowed to make any recommendations, promises or compromises of any sort, and that the only thing they could do would be to inform the Court of the history and facts of the particular case. He informed petitioner that the question of concurrent or consecutive sentences was completely within the discretion of the judge. Thus, there can be no question but that Mr. Richie was thoroughly and completely advised that there was no possibility of any deal, compromise or promise in connection with the sentence that might be imposed if he pleaded guilty to the crime with which he was charged. In addition to this, the content of Mr. Richie's letter to the United States Attorney dated October 9, 1962, clearly shows that he well knew that such promises and compromises could not be made.

After corresponding with counsel of his own choosing, and also after corresponding with the United States Attorney, and after discussing the matter with an agent of the Federal Bureau of Investigation, petitioner finally signed a "Consent to Transfer of Case for Plea and Sentence" under Rule 20 of the Federal Rules of Criminal Procedure. When the matter was set for arraignment, Mr. Thomas Grace, Jr., a Deputy United States Marshal, transported petitioner from the Louisiana State Penitentiary to the Federal Court in Baton Rouge, Louisiana, for plea and sentencing. During the trip from the state penitentiary to the courthouse, petitioner inquired of the Deputy Marshal as to the chances of his sentences being made to run concurrently. He was informed by Mr. Grace that as a matter of fact, the Federal Court had no power to make a federal sentence run concurrently with a state sentence, but that the Court could, if it saw fit, make a recommendation to the United States Attorney General that the place of incarceration be designated as the state penitentiary, which, if done by the United States Attorney General, would have the effect of a concurrent sentence. There was admittedly no discussion between petitioner and the United States

Deputy Marshal as to whether or not he thought this Court would make such a recommendation.

After petitioner arrived in the courtroom at Baton Rouge, Louisiana, but before he was called to the bar for sentencing, he requested permission to speak to Mr. Gene Palmisano, Assistant United States Attorney for the Eastern District of Louisiana, and upon being given such permission, he requested Mr. Palmisano to ask the Court to make his sentences run concurrently. He was immediately advised by the Assistant United States Attorney that it was the policy of that office not to make recommendations concerning sentences, and that furthermore, the Federal Court was unable to order a federal sentence to run concurrently with a state sentence. Thereafter, petitioner was called before the bar, at which time he pleaded guilty to the offense charged and was sentenced by this Court to imprisonment for a period of five (5) years, the execution of sentence to begin upon release of the defendant from his present state imprisonment. After sentence was pronounced, petitioner inquired of the Court as to whether or not it was possible for this Court to make his sentence run concurrently with the state sentence which he was then serving. The Court at that time re-affirmed the sentence as imposed.

Thus, to say that this petitioner did not understand the charges against him, and to say that he did not understand the sentence that might be imposed upon him, is nothing short of ridiculous. Petitioner's real complaint at this time is simply that he received a sentence longer than the one which he expected, or at least hoped for.

As to petitioner's claim that he did not competently and intelligently waive his constitutional right to the assistance of counsel for his defense is likewise completely without merit. Petitioner's experience with courts, lawyers, and jails during his lifetime gave him a pretty keen insight into his constitutional rights. Upon being called before the bar, and before he was asked to plead, his right to counsel was completely and clearly explained to him. When he was asked by the Court whether or not he wanted the Court to appoint a lawyer to represent him, he stated "I will handle this myself. I wish to waive a lawyer." He was asked, not once, but three times, whether or not he wanted to proceed without the assistance of counsel or whether he wanted this Court to appoint a lawyer to represent him. Each time he answered that he did not want a lawyer, but instead wished to handle the matter himself. Thereafter he was presented with a written waiver which he read, in Court, and then signed without hesitation. Thereafter, the indictment was read to him in open Court, and inquiry was made as to whether or not he had received a copy of the indictment prior to coming to Court. He advised the Court that he had received a copy of the indictment while in the Louisiana State Penitentiary. The Court then inquired specifically as to whether or not he understood completely the charge against him to which he responded in the affirmative. Consequently, there can be no doubt that this petitioner completely understood his right to counsel and intelligently and understandingly waived his right thereto.

As to petitioner's claim that his plea of guilty was induced by "coercion, intimidation, and false promises," nothing need be said. During the hearing he was asked specifically if this allegation in his petition were true or false, and he unequivocally answered that it was false. He informed the Court that at no time was he subjected to any coercion, intimidation, or false promises by anyone.

This case simply boils down to the fact that petitioner hoped that if he pleaded guilty to this offense, that he would receive a sentence which would run concurrently with the state sentence which he was serving. He took a well calculated risk, and lost. He simply has no grounds now upon which to complain. Petitioner's waiver of counsel and his plea of guilty were voluntarily, intelligently, and understandingly given.

Thus, there is no evidence whatsoever of any violation of his constitutional rights.

Some time after the hearing on this matter was held, petitioner filed a supplemental motion alleging that the Court had no jurisdiction to impose sentence because the United States Attorney did not sign the petitioner's consent to transfer the case to this Court under Rule 20. There is no merit to this contention as the signature of the proper Assistant United States Attorney does appear on the Consent to Transfer papers.

Thus, petitioner's application for relief under Title 28 U.S.C.A. § 2255 must be denied.